**Ross C. Goodman, Nevada State Bar No. 7722**
GOODMAN LAW GROUP
520 South Fourth Street
Las Vegas, Nevada 89101
(702) 383-5088
(702) 385-5088 (Facsimile)

**Hugh E. Rodham, Florida ID No. 549606**
RODHAM & FINE, P.A.
633 SE 3rd Avenue, Suite 4R
Fort Lauderdale Florida 33301-3151
(954) 467-5440
(954) 524-5143 (Facsimile)

**Joel L. Wohlgemuth, Oklahoma Bar Association No. 9811**
**William W. O'Connor, Oklahoma Bar Association No. 13200**
**Adrienne Barnett Robertson, Oklahoma Bar Association No. 20155**
NORMAN WOHLGEMUTH CHANDLER & DOWDELL
2900 Mid-Continent Tower
401 South Boston
Tulsa, Oklahoma 74103-4023
(918) 583-7571
(918) 584-7846 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**


UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| ASIAN AMERICAN ENTERTAINMENT CORPORATION, LIMITED, a Macau Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. _____ |
| LAS VEGAS SANDS, INC., a Nevada corporation, VENETIAN CASINO RESORT, LLC, a Nevada limited liability company; VENETIAN VENTURE DEVELOPMENT, LLC, a Nevada limited liability company; WILLIAM P. WEIDNER, an individual; and DAVID FRIEDMAN, an individual, | ) ) ) ) ) ) ) ) | COMPLAINT JURY DEMAND |
| Defendants. | ) ) | |

## JURISDICTION AND VENUE

1.      This is a suit between a citizen of a foreign state and citizens of a state within the United States where the matter in controversy exceeds $75,000.00.  Therefore, jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(2).

2.      Pursuant to 28 U.S.C. §1391(a), venue is proper in this judicial district because all Defendants reside within the district.

## NATURE OF THE ACTION

3.      This is an action for money damages arising from an agreement between Asian American Entertainment Corporation, Limited ("AAECL") and defendant Venetian Venture Development, LLC ("Venetian Venture Development" or "Venetian") to work towards obtaining a gaming license in Macau, and thereafter, to develop and operate a casino, hotel, and other related facilities.  Defendants Las Vegas Sands, Inc., Venetian Casino Resort, LLC, Venetian Venture Development, LLC, William P. Weidner, and David Friedman (collectively "Defendants") violated their fiduciary duties as directors of AAECL and/or joint venturers with AAECL, and additionally breached binding provisions of a letter agreement that memorialized the joint venture by communicating directly with Macau governmental officials, communicating with and joining a competitor of the joint venture, Galaxy Casino S.A. ("Galaxy), providing Galaxy with confidential information about the joint venture with AAECL, and terminating the joint venture with AAECL in favor of its alliance with Galaxy (hereinafter, the "Venetian-Galaxy Group").  Only two days after Venetian Venture Development informed AAECL of its eleventh-hour defection from the joint venture, the Venetian-Galaxy Group was awarded a gaming license by Macau.  Had Defendants not

-1-

breached their fiduciary and contractual duties to AAECL, the Venetian-Galaxy Group would not have been awarded the license and the AAECL joint venture would have received the gaming license instead.  As a direct result of Defendants' deceptive and illegal actions, Defendants have profited enormously.  Therefore, AAECL seeks both compensatory and punitive damages.

## THE PARTIES

4.      Plaintiff Asian American Entertainment Corporation, Limited is a corporation organized under the laws of Macau, Special Administrative Region ("SAR"), People's Republic of China.

5.      Defendant Las Vegas Sands, Inc. ("LVS") is a Nevada corporation that since 2004 has been wholly-owned by Las Vegas Sands Corp., a Nevada corporation that is publicly traded on the New York Stock Exchange.  LVS was publicly traded on the New York Stock Exchange until 2004, when a corporate reorganization occurred and shareholders of LVS received shares of Las Vegas Sands Corp. in exchange for their LVS shares.  Sheldon G. Adelson is the controlling shareholder of Las Vegas Sands Corp. and, before the 2004 reorganization, was controlling shareholder of LVS, as well as LVS's controlling director, Chief Executive Officer, and Chairman of the Board.  At all times relevant to this Complaint, LVS controlled, directly or through its subsidiaries, defendants Venetian Casino Resort, LLC and Venetian Venture Development, and operated through defendants Venetian Casino Resort, LLC and Venetian Venture Development.

6.      Defendant Venetian Casino Resort, LLC ("Venetian Casino Resort") is a Nevada limited liability company and a subsidiary of LVS.   Venetian Casino Resort was formed in 1997 by two members, LVS and Interface Group Holding, Inc. ("Interface"), a Nevada corporation wholly

owned by Sheldon G. Adelson, the controlling shareholder of LVS. Interface, at all times relevant to this complaint, owned 100% of a redeemable preferred interest in Venetian Casino Resort. At all times relevant to this Complaint, LVS was the managing member of Venetian Casino Resort, owned 100% of the common equity of Venetian Casino Resort, and controlled Venetian Casino Resort.

7.   Defendant Venetian Venture Development, LLC is a Nevada limited liability company. At all times relevant to this Complaint, the sole and managing member of Venetian Venture Development was Venetian Casino Resort, which was an operating subsidiary of, and controlled by, LVS. Venetian Casino Resort formed Venetian Venture Development in September 2000 and capitalized Venetian Venture Development with $1,000.00. Sheldon G. Adelson, the controlling shareholder of LVS, was the Chairman of the Venetian Venture Development Board at all times relevant to this Complaint. Defendant Weidner, who served as President of LVS, at all times relevant to this Complaint, also served as the President of Venetian. All officers of Venetian Venture Development also served as officers of LVS. Venetian is, and has been since its inception, completely controlled by, and an instrumentality of, Venetian Casino Resort and LVS.

8.   Defendant William P. Weidner ("Weidner") is a citizen of Las Vegas, Nevada. Weidner is a director of AAECL, and was initially appointed as a director in December 2001. Additionally, Weidner has served as President and Chief Operating Officer of defendant LVS, or its parent company, since 1995. Weidner also served as President of defendant Venetian Venture Development, at all times relevant to this Complaint, and has served as a director of Galaxy. Weidner acted as an agent of defendants LVS, Venetian Casino Resort, and its operating subsidiary Venetian Venture Development at all times relevant to this Complaint.

-3-

9.     Defendant David Friedman ("Friedman") is a citizen of Las Vegas, Nevada.  Friedman was a director of AAECL and was initially appointed as a director in December 2001.  Additionally, Friedman has served as the Assistant to the Chairman of the Board and secretary of defendants LVS and Venetian Venture Development, and also has served as a director of Galaxy.  Friedman was an agent of defendants LVS, Venetian Casino Resort, and Venetian Venture Development, LLC at all times relevant to this Complaint.

## BACKGROUND AND GENERAL ALLEGATIONS

### *AAECL and LVS Agree to Seek One of Three Gaming Licenses to be Issued by Macau*

10.     Commencing in 1937, all gaming licenses in Macau were held by a single entity.  However, in 2001, the Macau SAR government announced the formation of the Public Tender Committee of Gaming Concessions ("PTC"), which was empowered to award additional licenses once the license held by the single entity expired in 2001.  In fall 2001, the PTC announced a tender submission process, whereby the PTC would grant three tenderers gaming licenses and subsequently execute three concessions contracts with the licensees.  The procedures adopted by the PTC required that tenderers for a gaming license have extensive and substantial casino operations experience, or be affiliated with such an entity.

11.     After the PTC's formation, and in the fall of 2001, Dr. Shi Sheng (Marshall) Hao, Chairman of AAECL, traveled to Las Vegas to meet with representatives of LVS and negotiate an agreement whereby LVS or one of its subsidiaries would become affiliated with AAECL in order to obtain one of the Macau gaming licenses.

12.     During Dr. Hao's visit to Las Vegas, AAECL and LVS agreed to enter into a joint venture to seek a gaming license in Macau pursuant to the process promulgated by the PTC.  Both LVS and AAECL brought unique attributes to this joint venture.  LVS, which controlled and operated through Venetian Venture Development, had significant experience in not only the casino business, but also in convention and trade show promotion, which was a significant part of AAECL's plans for developing a gaming operation in Macau.  AAECL, as a business affiliate of China Development Industrial Bank ("CDIB"), brought access to capital for the development of a gaming resort, as well as for non-gaming economic investment opportunities.  The ability to offer this substantial investment in Macau's economic development provided AAECL an advantage in the tender submission process.

*AAECL and Venetian Venture Development Execute a Contractual Letter Agreement*

13.     After the negotiations in Las Vegas, on October 18, 2001, Venetian Venture Development drafted a letter agreement, which was signed on behalf of Venetian Venture Development by defendant Weidner, and on behalf of AAECL by Dr. Hao.  The parties to the October 18, 2001 letter agreement later amended the agreement on November 15, 2001.  Together, the October 18, 2001 letter agreement and the November 15, 2001 amendment shall be referred to herein as the "Letter Agreement."

14.     The Letter Agreement provided that AAECL would work to obtain a gaming license in Macau, and thereafter, AAECL and Venetian would jointly operate a casino, hotel, and other related facilities.  AAECL, as the developer of the proposed Macau Venetian resort, was to obtain a gaming license from the Macau government.

15.     Additionally, after AAECL successfully obtained a gaming license, the Letter Agreement provided that Venetian Venture Development would enter into a development agreement with AAECL, which was to set forth fully the plans to build the casino resort and related facilities. Venetian Venture Development also agreed to enter into a licensing agreement with AAECL to permit AAECL's proposed casino resort to use the name "Venetian."  To compensate Venetian Venture Development, AAECL agreed to enter into a management agreement, which would pay Venetian 2% of the casino resort's gross annual revenue and 10% of its EBITDA.

16.     The Letter Agreement additionally provided that AAECL would grant Venetian the option to purchase up to 27.5% of its stock upon the execution of these agreements, an amount that was explicitly agreed upon by Sheldon G. Adelson.  AAECL was to be the corporation that owned and operated the proposed Macau Venetian casino resort.

17.     The Letter Agreement required that Venetian Venture Development and AAECL negotiate exclusively with one another to effect the contemplated goals, and additionally neither solicit nor encourage any other proposals related to the tender submission process in Macau (the "Exclusivity Provision").  This Exclusivity Provision applied to affiliates of both AAECL and Venetian, and therefore to all Defendants, since all were affiliated with either Venetian Venture Development or AAECL.

18.     The Letter Agreement also required that Venetian Venture Development, as well as its affiliates, agents, and representatives, hold in strict confidence all of AAECL's confidential information, and prohibited the disclosure of confidential information to any person or entity other than agents of Venetian Venture Development or AAECL, without the prior and express written

consent of AAECL (the "Non-Disclosure Provision").

19.     On January 15, 2002, in the presence of defendant Weidner, Adelson, the Chairman of Venetian Venture Development, and Dr. Hao agreed to extend the provisions of the Letter Agreement until February 15, 2002.  After this time, Defendants' course of conduct with respect to AAECL, as well as their representations made to AAECL, evidenced an intent to be bound by the provisions of the Letter Agreement until Defendant Friedman purportedly terminated the relationship on February 6, 2002.

### *AAECL Provides the PTC with Tender Submissions and Presentations*

20.     Following Dr. Hao's visit to Las Vegas, the creation of the joint venture, and execution of the Letter Agreement, AAECL developed plans, analyses, descriptions and data to submit to the PTC during the tender submission process.

21.     In December 2001, AAECL provided the PTC with its tender submission seeking a gaming license, which contained information describing its prospective joint venture with Venetian Venture Development, the project they would build, and AAECL's business plans.  Among other things, AAECL's tender submission informed the PTC that the CDIB had fully committed to finance the joint venture's proposed project, in the amount of approximately $1.1 billion, and that the CDIB would additionally invest approximately $700 million in non-gaming related infrastructure development projects in Macau.

22.     Also in December 2001, defendants Friedman and Weidner became directors of AAECL, assuming a fiduciary position with respect to AAECL.

23.     Twenty-one (21) entities provided the PTC with tender submissions, all seeking to receive one of the three gaming licenses.  The PTC conducted a preliminary review of the tenders and rejected the qualifications of three (3) of the tenderers.  It invited the remaining tenderers to make additional presentations to PTC during a second round of review.  AAECL devoted substantial resources and efforts to developing a presentation that would provide the PTC with further information about AAECL's proposed development plans, as well as LVS's and Venetian Casino Resort's experience in trade show and convention promotion, which the joint venture would bring to Macau if the PTC awarded AAECL a gaming license.  AAECL shared all these plans with Defendants.  Pursuant to AAECL's agreement with Venetian Venture Development, these plans, presentations, and concepts were solely and exclusively the confidential property of AAECL.

24.     On or about January 4, 2002, AAECL gave its presentation to the PTC, accompanied by defendant Weidner, as a representative of LVS, Venetian Casino Resort, and Venetian Venture Development, and Michael Jen, executive vice president of CDIB.  Together, AAECL, Weidner, and Jen emphasized the plan that AAECL had created: a commitment to create a high quality temporary casino, which would operate while a Venetian-style casino resort and convention center in Macau was developed and constructed, as well as the CDIB's financial commitments to this project and economic development in Macau generally.

25.     Following AAECL's and others' presentations to the PTC, the PTC invited nine (9) tenderers, including AAECL, to participate in a third round of review.  Galaxy was not one of the nine (9) tenderers who proceeded to the third round.  AAECL made another presentation on or about January 15, 2002.  Sheldon G. Adelson, then the controlling shareholder, controlling board member,

-8-

and CEO of LVS, as well as the Chairman of Venetian Venture Development, actively participated in this presentation to the PTC. Pursuant to the agreement between AAECL and Venetian Venture Development, the materials, business plans, and analyses presented to the PTC on January 15, 2002 were presented solely and exclusively in furtherance of the joint venture, and all opportunities to be derived therefrom likewise belonged to AAECL.

26.     As LVS's controlling shareholder, controlling board member, and CEO, Adelson became more involved in the joint venture between AAECL and Venetian in January 2002. He flew to Macau and participated actively in the January 15, 2002 presentation to the PTC. While in Macau, on or around January 15, 2002, Adelson offered to extend the Letter Agreement for an additional month, until February 15, 2002. Dr. Hao, on behalf of AAECL, agreed to the extension of the Letter Agreement. Defendant Weidner was present when this agreement took place.

*Venetian Venture Development Seeks to Become a Shareholder of AAECL*

27.     As provided in the Letter Agreement, Venetian Venture Development had agreed not to become a shareholder in AAECL until after the consummation of various agreements, which were to be executed only in the event of AAECL's successful completion of the tender submission process. However, at some point during the tender submission process, Venetian Venture Development determined it would be more advantageous to it to become a shareholder prior to the PTC's decision on which tenderers should receive gaming licenses.

28.     On January 22, 2002, the PTC announced that entities that had submitted tender submissions would be permitted to restructure or merge until January 31, 2002, but that only the tenderer itself, or a shareholder thereof, could restructure or merge. Because Venetian Venture

Development was not a tenderer, and was not yet a shareholder of AAECL pursuant to the joint venture agreement, this announcement did not permit it to merge with any other tenderer.

29.     On January 25, 2002, defendant Weidner sent Dr. Hao a fax.  The cover sheet to the fax memorialized the January 15, 2002 agreement to extend the Letter Agreement.  Specifically, defendant Weidner reiterated Venetian Venture Development's commitment to negotiate exclusively with AAECL.  Additionally, the fax included a document purporting to be another amendment to the Letter Agreement, but the document deviated from the amendment agreed upon on or around January 15, 2002.  In his fax cover sheet, defendant Weidner candidly admitted that Venetian now sought for AAECL to distribute at least one of its shares to Venetian prior to the completion of the tender submission process and in contravention of the parties' earlier understanding.  Although on January 15, 2002, the parties had agreed to extend the Letter Agreement until February 15, 2002, the additional amendment defendant Weidner sent was never agreed upon because it profoundly differed from the understanding that AAECL and Defendants had reached during negotiations, as memorialized by the Letter Agreement, and reaffirmed on January 15, 2002.  AAECL never distributed any of its shares to Venetian Venture Development.

30.     The PTC's announcement that tenderers could merge, thereby combining their proposals, set off a flurry of activity.  Venetian Venture Development, on information and belief, contacted a number of Las Vegas casinos which had themselves submitted tenders to the PTC.

31.     On or about January 30, 2002, AAECL was introduced to Galaxy, a competing tenderer, for the purpose of discussing a merger.  Consistent with its duties to its joint venturer, AAECL duly notified Venetian that it planned to engage in such discussions with Galaxy.

32.     During the course of AAECL's discussions with Galaxy, Galaxy offered to merge with AAECL in exchange for 60% of AAECL's shares.  AAECL presented a counteroffer to Galaxy. Before any agreement was reached, however, on or about January 31, 2002, Galaxy informed AAECL that it had entered into an understanding with another party and terminated discussions with AAECL.  On January 31, 2002, the PTC's deadline for restructuring of tenderers and tender submissions expired.

    *Venetian Venture Development Joins Galaxy Without Regard to its Obligations to AAECL*

33.     Throughout the tender submission process, which began in December 2001, representatives of LVS and Venetian Venture Development, on information and belief, engaged in negotiations with the PTC and with Macau SAR officials while no representative of AAECL was present.  Through those negotiations, LVS and Venetian Venture Development learned that the Macau SAR officials were concerned that the CDIB was to become the largest shareholder of AAECL if AAECL were awarded a gaming license.  During this time, Venetian was repeatedly solicited to abandon its commitments to AAECL and merge with other tenderers.

34.     Seeking to secure its position, Venetian Venture Development began negotiations with Galaxy to join its tender submission.  Galaxy had been eliminated from the PTC's consideration after the January 4, 2002 presentation round, and therefore at that time had a motivation to seek a prominent partner, like LVS or Venetian, which would bolster the possibility that the PTC would reconsider Galaxy's tender submission.

35.     On or about January 30 and 31, 2002, while AAECL and Galaxy were negotiating a deal to merge, two of AAECL's board members, defendants Weidner and Friedman, were engaging

in separate, secret negotiations against AAECL's interests, seeking to merge Venetian Venture Development and Galaxy, and to exclude AAECL from the merger.

36.     On February 1, 2002, on information and belief, Venetian Venture Development and Galaxy submitted documents to PTC purporting to show that Venetian had acquired shares of Galaxy.

37.     None of the Defendants offered AAECL the opportunity to acquire those shares of Galaxy, nor did any Defendant inform AAECL of the opportunity to negotiate with and combine with Galaxy, including defendants Weidner and Friedman, who were directors of AAECL.  No Defendant notified AAECL of the negotiations with Galaxy, or of the acquisition of Galaxy's shares.

38.     During the course of negotiating and/or combining with Galaxy, representatives of Venetian Venture Development, Venetian Casino Resort, and LVS, including defendants Weidner and Friedman, disclosed business plans and information that were the sole and exclusive property of AAECL.  Additionally, on information and belief, the Venetian-Galaxy Group used those plans and information in their submissions to the PTC.

39.     Throughout this period of time, Defendants actively concealed their involvement with Galaxy and explicitly reaffirmed Venetian's commitment to AAECL, as well as to the commitments made in the Letter Agreement.  At all times during this period, Defendants' conduct evidenced an intent to be bound by the provisions of the Letter Agreement.

40.     On February 5, 2002, representatives of AAECL contacted defendant Weidner, who admitted that he had spoken with a senior governmental official in Macau, who allegedly wanted Venetian Venture Development to abandon AAECL's tender submission entirely and merge with

another group.  During that same conversation, the AAECL representatives asked Weidner at least twice whether he wished to terminate the understandings between Venetian Venture Development and AAECL, as the Letter Agreement provided that either party could terminate the relationship at any time.  Each time Weidner refused to terminate the relationship and reaffirmed Venetian's commitments to AAECL and the principles contained in the Letter Agreement.

41.     Defendant Weidner's statements to AAECL that Venetian did not wish to terminate the relationship with AAECL were made even though the Defendants had already secretly positioned themselves as part of Galaxy's competing tender offer.  Defendant Weidner's statements were intended to ensure that Venetian remained a part of AAECL's tender submission and to increase the probability that Venetian would be affiliated with a tenderer that ultimately received a gaming license.

### *Venetian Repudiates Affiliation with AAECL and the PTC Awards Galaxy a Gaming License*

42.     At the end of the day on February 6, 2002, defendant Friedman faxed a letter to Dr. Hao purporting to terminate Venetian Venture Development's relationship with AAECL.  The faxed letter purported to constitute notice that defendant Friedman and defendant Weidner resigned as directors of AAECL; however, this method of resignation with respect to defendant Weidner was not in accordance with Macau SAR law.  As of the date of the commencement of this action, defendant Weidner has not taken any appropriate legal steps to resign as a director of AAECL. Additionally, Defendants have never returned to AAECL any of the proprietary materials that AAECL developed and shared exclusively with Defendants.

43.     On information and belief, throughout the day of February 7, 2002, Defendants further negotiated with Macau governmental officials to determine how Venetian could circumvent the PTC's rules regarding the restructuring of tenderers and officially join Galaxy's tender submission.

44.     The PTC was scheduled to announce the award of gaming licenses on the afternoon of February 8, 2002. On information and belief, on the morning of February 8, 2002, with the announcement of gaming license awards just hours away, PTC convened an emergency, non-public meeting at which the Venetian situation was discussed.  At this point Venetian Venture Development shared defendant Friedman's February 6, 2002 letter with the PTC, showing that it was no longer affiliated with any tenderer because it had terminated its relationship with AAECL.  Plainly, the PTC desired that the entity affiliated with the Venetian be awarded a gaming license and it allowed Venetian to join Galaxy's tender submission.

45.     On the afternoon of February 8, 2002, the PTC announced that it had awarded Galaxy a gaming license.  A Macau government official explained that the PTC's decision had little to do with whether Venetian was allied with Galaxy or AAECL, and that since the PTC wanted Macau to have a facility supported by LVS's experience in trade show and convention promotion, it awarded the tenderer affiliated with Venetian Venture Development the gaming license.  Due to Venetian's defection, this tenderer was Galaxy, not AAECL.

46.     AAECL appealed the PTC's decision to the Chief Executive of Macau, arguing that Venetian's defection in favor of Galaxy was impermissible under the rules established by the PTC. As a remedy, AAECL requested that the Macau government consider restructuring Galaxy so that

AAECL would become a 50% shareholder therein and be permitted to reap the benefits and profits of its plans for development, which were misappropriated by the Venetian-Galaxy Group.

47.     In response to this proposal, Dr. Hao received assurances in person in March 2002 and via letter in May 2002 from the Chief Executive of Macau, Edmund Ho, that he would help AAECL obtain the shares of, or a sub-concession contract from, Galaxy.  Neither AAECL, nor a successor entity has received a subconcession contract from, or shares of, Galaxy.

*LVS Experiences Great Success and Macau Casino Business Becomes Extremely Profitable*

48.     In June 2002, Galaxy entered into a twenty-year term concessions contract with Macau.  Galaxy's contract with Macau specified that Galaxy had agreed to spend 8.8 billion Macau pacatas ($1.1 billion dollars) – the exact cost AAECL estimated for implementing its plan. Additionally, the contract between Macau and Galaxy also contained references to plans to construct a Venetian-themed resort and a convention center, which were the two cornerstones of AAECL's proprietary tender submission.  Thereafter, the Galaxy-Venetian Group began to implement the plans that AAECL had developed to construct the casino resort and related trade show and convention facilities.

49.     In December 2002, the Macau government approved a sub-concession agreement that permitted a wholly-owned subsidiary of LVS, Venetian Macau, S.A., to develop the casino and related facilities separately from Galaxy, the concession holder.

50.     In 2004, LVS and its subsidiaries completed construction of the Sands Macau, a casino located on Macau's waterfront.  The concept of creating a temporary casino like the Sands Macau, which could continue to operate after the completion of the Venetian-style resort, was part

of AAECL's original proposal to the PTC.  AAECL's concept of a temporary casino was unique among those who held gaming licenses and proved to be extremely profitable.  Within less than one year, LVS had earned back its $260 million investment in this property.  The Sands Macau has continued to be extremely profitable for LVS, consistently surpassing the market's expectations and posting record earnings.  Las Vegas Sands Corp. reported that the Sands Macau was the company and its subsidiaries' highest-earning segment in 2005, generating more than $896 million in net revenues, and over $340 million in adjusted EBITDA.  This trend has continued.  In 2006, the Las Vegas Sands Corp. reported record financial results for its first and third quarters.  According to company executives, including defendant Weidner, these record results were largely attributable to operations in Macau.  In the first quarter of 2006, Las Vegas Sands Corp. reported that its Macau casino operations were responsible for over $278 million in revenues, with over $90 million in operating income.  Likewise, during the second quarter of 2006, Macau casino operations resulted in revenues of over $307 million and operating income of over $100 million.  Continuing this trend, in the third quarter of 2006, Macau casino operations reached new record highs of over $335 million in revenues and over $104 million in operating income.

51.     The Venetian Macau Resort Hotel that AAECL devised is expected to open in 2007, and is likewise expected to be highly profitable for LVS.  Recent news reports tout that Macau has surpassed Las Vegas as the city with the most casino revenue in the world.  Revenue from gaming continues to skyrocket, from approximately $1.6 billion in 2001, to over $6 billion in revenue in 2006.  Analysts project that revenues will continue to rise.  Had Defendants not breached their fiduciary and contractual duties to AAECL, AAECL would subsequently have enjoyed the enormous profits that

LVS has experienced, and will continue to experience.

## FIRST CLAIM FOR RELIEF

## BREACH OF CONTRACT

(Against Defendants LVS, Venetian Resort Casino, and Venetian Venture Development)

52.     Paragraphs 1 through 51 of this Complaint are incorporated by reference.

53.     This count states a claim for relief based upon breach of contract.

54.     The Letter Agreement contained a binding contract and binding provisions between AAECL and Venetian Venture Development, including without limitation the Exclusivity Provision and Confidentiality Provision.

55.     Venetian Venture Development breached the Exclusivity Provision of the Letter Agreement by taking the following actions, including without limitation:

(a)     negotiating with competing tenderers, including Galaxy, soliciting and/or encouraging inquiries and/or proposals from competing tenderers, including Galaxy, and entering into agreements with competing tenderers, including Galaxy;

(b)     soliciting and/or encouraging proposals from various Las Vegas casinos to enter into agreements related to the acquisition of a gaming license in Macau;

(c)     permitting its affiliates to negotiate with various Macau governmental officials outside the presence of AAECL about the tender submissions of AAECL and its competitors to ensure that an entity affiliated with LVS would profit from the PTC's issuance of gaming licenses, no matter who the licensee;

(d)     permitting its affiliates to negotiate with competing tenderers, including Galaxy, to solicit or encourage inquiries and/or proposals from competing tenderers, including Galaxy, and to enter into agreements with competing tenderers, including Galaxy;

(e)     permitting its affiliates to solicit and/or encourage proposals from various Las Vegas Casinos to enter into agreements related to the acquisition of a gaming license in Macau;

(f)     negotiating with various Macau governmental officials outside the presence of AAECL about the tender submissions of AAECL and its competitors to ensure that an entity affiliated with LVS would profit from the PTC's issuance of gaming licenses, no matter who the licensee; and

(g)     using confidential and proprietary information during negotiations with third parties, including but not limited to potential sources necessary to fund the tender submission developed by AAECL.

56.     Venetian Venture Development also breached the Confidentiality Provision of the Letter Agreement by taking the following actions, including without limitation:

(a)     disclosing AAECL's confidential and proprietary information to competing tenderers, including Galaxy, without AAECL's explicit consent;

(b)     disclosing AAECL's confidential and proprietary information to various Las Vegas casinos that sought to obtain a gaming license in Macao, without AAECL's explicit consent;

(c)     permitting its affiliates to disclose AAECL's confidential and proprietary information to Macau governmental officials, without AAECL's explicit consent;

(d)     permitting its affiliates to disclose AAECL's confidential and proprietary

information to competing tenderers, including Galaxy, without AAECL's explicit consent;

        (e)     permitting its affiliates to disclose AAECL's confidential and proprietary information to various Las Vegas casinos that sought to obtain a gaming license in Macao, without AAECL's explicit consent;

        (f)     disclosing AAECL's confidential and proprietary information to Macau governmental officials, without AAECL's explicit consent; and

        (g)     disclosing, and permitting its affiliates to disclose, confidential and proprietary information to third parties, including but not limited to potential sources necessary to fund the tender submission developed by AAECL.

        57.     Venetian Resort Casino and LVS controlled and dominated Venetian Venture Development to such an extent that Venetian Venture Development was merely an instrumentality of Venetian Resort Casino and LVS.  Venetian Casino Resort was the sole member and manager of Venetian Venture Development.  Additionally, LVS was the managing member of Venetian Casino Resort, and owned 100% of the common equity of Venetian Casino Resort.  Interface, a company under common control with LVS, owned the preferred interest in Venetian Casino Resort. Moreover, all officers of Venetian Venture Development were also officers of LVS, and Venetian Venture Development, Venetian Casino Resort, and LVS all shared the same offices in Las Vegas. At all times relevant to this complaint, there was a complete unity of ownership, control, and interest among Venetian Venture Development, Venetian Casino Resort, and LVS, and Venetian Venture Development was inseparable and indistinguishable from Venetian Casino Resort and LVS.  AAECL entered into the joint venture with Venetian Venture Development in reliance on the fact that it was

a mere instrumentality of Venetian Casino Resort and LVS.  Due to Venetian Venture Development's gross undercapitalization and total domination by Venetian Casino Resort and LVS, justice requires that Venetian Resort Casino and LVS be liable for Venetian Venture Development's breaches of contract.

58.     As a direct result of Venetian Venture Development's breach of the contractual provisions contained in the Letter Agreement, including without limitation the Exclusivity and Confidentiality Provisions, as alleged above and throughout this Complaint, AAECL has incurred substantial damages in an exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTIES

(Against Defendants Friedman and Weidner)

59.     Paragraphs 1 through 58 of this Complaint are incorporated by reference.

60.     This count states a claim for relief based upon breaches of fiduciary duty.

61.     Because AAECL is a Macau corporation, this claim is governed by Macau law.

62.     As directors of AAECL, defendants Friedman and Weidner were in a position of trust and confidence with respect to AAECL and owed AAECL fiduciary duties, including without limitation, the duties to act in AAECL's best interest, to refrain from competing with AAECL, to refrain from self dealing, to refrain from taking any action that would harm AAECL, to disclose material information about AAECL's interests to AAECL, and to refrain from exploiting any opportunity that would be advantageous to AAECL.

63.     Defendants Friedman and Weidner breached their fiduciary duties by taking the following actions, including without limitation:

(a)     causing Venetian Venture Development to align with a competitor of AAECL and to compete with AAECL;

(b)     failing to disclose that Venetian Venture Development had breached its contractual duties to AAECL;

(c)     failing to disclose that Venetian Venture Development was engaged in negotiations with competitors of AAECL and with Macau governmental officials;

(d)     disclosing confidential and proprietary information to third parties to the detriment of AAECL;

(e)     misrepresenting that Venetian Venture Development intended to remain committed to its joint venture with AAECL in order to conceal Venetian Venture Development's negotiations and arrangements with third parties;

(f)     actively working to prevent AAECL from obtaining a gaming license in Macau;

(g)     causing Venetian Venture Development to usurp AAECL's opportunity to merge with Galaxy, where AAECL had a reasonable expectation of such a merger given the progression of its negotiations with Galaxy; and

(h)     causing Venetian Venture Development to conspire with Galaxy to usurp AAECL's opportunity to obtain a gaming license in Macau, where AAECL had a reasonable expectation of becoming a licensee.

64.     As a direct result of defendants Friedman's and Weidner's breach of their fiduciary duties to AAECL, as alleged above and throughout this Complaint, AAECL has incurred substantial actual damages in an exact amount to be proven at trial.

65.     Defendants Friedman and Weidner willfully and intentionally engaged in the above-described acts to benefit themselves and their principals, LVS and Venetian Venture Development, in violation of the fiduciary duties they owed to AAECL.   Defendants Friedman's and Weidner's conduct was willful, fraudulent, oppressive and malicious.   Accordingly, Plaintiff is entitled to substantial punitive damages from defendants Friedman and Weidner in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

## BREACH OF JOINT VENTURER FIDUCIARY DUTIES

(Against Defendants LVS, Venetian Casino Resort, and Venetian Venture Development)

66.     Paragraphs 1 through 65 of this Complaint are incorporated by reference.

67.     This count states a claim for relief based upon breaches of fiduciary duty.

68.     This claim is governed by Macau law under Nevada's choice of law principles.

69.     AAECL and Venetian Venture Development were joint venturers, and as such, Venetian Venture Development owed AAECL fiduciary duties, including without limitation, the duties to remain loyal to the joint venture, to conduct its affairs with AAECL in good faith, fairness and honesty with respect to the objectives of the joint venture, and to refrain from attempting to acquire or acquiring the objectives of the joint venture to the exclusion of AAECL.

70.   Venetian Venture Development breached its fiduciary duties by, among other actions:

(a)   breaching in bad faith its contractual obligations to AAECL;

(b)   aligning with a competitor of AAECL for the purpose of competing with AAECL and preventing AAECL from obtaining a gaming license, which was one of the primary purposes of the joint venture between AAECL and Venetian;

(c)   engaging in negotiations with competitors of AAECL for the purpose of attempting to prevent AAECL from obtaining a gaming license;

(d)   disclosing in bad faith confidential and proprietary information to third parties to the detriment of AAECL;

(e)   misrepresenting its intent to remain committed to its joint venture with AAECL in order to conceal its negotiations and arrangements with third parties;

(f)   actively working to prevent AAECL from obtaining a gaming license in Macau;

(g)   usurping the objectives of the joint venture by merging with Galaxy, where AAECL had a reasonable expectation of such a merger given the progression of its negotiations with Galaxy; and

(h)   conspiring with Galaxy to usurp AAECL's opportunity to obtain a gaming license in Macau.

71.   Venetian Resort Casino and LVS controlled and dominated Venetian Venture Development to such an extent that Venetian Venture Development was merely an instrumentality of Venetian Resort Casino and LVS.  Venetian Casino Resort was the sole member and manager of

-23-

Venetian Venture Development. Additionally, LVS was the managing member of Venetian Casino Resort, and owned 100% of the common equity of Venetian Casino Resort. Interface, a company under common control with LVS, owned the preferred interest in Venetian Casino Resort. Moreover, all officers of Venetian Venture Development were also officers of LVS, and Venetian Venture Development, Venetian Casino Resort, and LVS all shared the same offices in Las Vegas. At all times relevant to this complaint, there was a complete unity of ownership, control, and interest among Venetian Venture Development, Venetian Casino Resort, and LVS, and Venetian Venture Development was inseparable and indistinguishable from Venetian Casino Resort and LVS. AAECL entered into the joint venture with Venetian Venture Development in reliance on the fact that it was a mere instrumentality of Venetian Casino Resort and LVS. Due to Venetian Venture Development's gross undercapitalization and total domination by Venetian Casino Resort and LVS, justice requires that Venetian Resort Casino and LVS be liable for Venetian Venture Development's breaches of fiduciary duty.

72. As a direct result of Venetian's breach of its fiduciary duties to AAECL, AAECL has incurred substantial actual damages in an exact amount to be proven at trial.

73. Defendant Venetian Venture Development willfully and intentionally engaged in the above-described acts to benefit itself financially. Defendant Venetian Venture Development's breaches of the fiduciary duties it owed AAECL were willful, fraudulent, malicious and oppressive. Accordingly, AAECL is entitled to substantial punitive damages in an amount to be proven at trial.

<u>**STATEMENT REGARDING PRO HAC VICE PETITIONS**</u>

Pursuant to LR IA 10-2(c), counsel for plaintiff Asian American Entertainment Corporation,

Limited hereby states that they shall comply with LR IA 10-2 within 45 days.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff Asian American Entertainment Corporation, Limited requests that the Court enter judgment against defendants Las Vegas Sands, Inc., Venetian Casino Resort, LLC, Venetian Venture Development, LLC, William P. Weidner, and David Friedman, and in favor of plaintiff as follows:

A.    Substantial compensatory and actual damages, the exact amount to be proven at trial;

B.    Substantial punitive damages, the exact amount to be proven at trial;

C.    Disgorgement of all profits derived from or related to the acquisition of the Macau gaming license or the joint venture between Galaxy and Venetian Venture Development;

D.    Costs of this lawsuit, including attorney's fees; and

E.    Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Demand is hereby made by Plaintiff Asian American Entertainment Corporation, Limited for trial by jury in the above-captioned matter.

-25-

Respectfully submitted this 5th day of February, 2007.


By:   /s/ _____

    **Ross C. Goodman, Nevada State Bar No. 7722**
**GOODMAN LAW GROUP**
520 South Fourth Street
Las Vegas, Nevada 89101
  (702) 383-5088
  (702) 385-5088 (Facsimile)


**Hugh E. Rodham, Florida ID No. 549606**
**RODHAM & FINE, P.A.**
633 SE 3rd Avenue, Suite 4R
Fort Lauderdale Florida 33301-3151
(954) 467-5440
(954) 524-5143 (Facsimile)


**Joel L. Wohlgemuth, Oklahoma Bar Association  No. 9811**
**William W. O'Connor, Oklahoma Bar Association No. 13200**
**Adrienne Barnett Robertson, Oklahoma  Bar Association No. 20155**
**NORMAN WOHLGEMUTH CHANDLER & DOWDELL**
2900 Mid-Continent Tower
401 South Boston
Tulsa, Oklahoma 74103-4023
(918) 583-7571
(918) 584-7846 (Facsimile)


**ATTORNEYS FOR PLAINTIFF,**
**ASIAN AMERICAN ENTERTAINMENT CORPORATION, LIMITED**